FILED
CLERK
3:57 pm, Nov 04, 2021
U.S. DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
LONG ISLAND OFFICE

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X
WINDWARD BORA LLC,

               Plaintiff,

     -against-                           **MEMORANDUM AND ORDER**

                                                 18-CV-5997 (GRB)

DAVID COHEN A/K/A DAVID L. COHEN,
TRACY J. COHEN, A/K/A TRACY JACANIN,

               Defendants.
-----------------------------------------------------------------X

**APPEARANCES:**

Seth Daniel Weinberg
Hasbani & Light, P.C.
450 Seventh Ave
Suite 1408
New York, NY 10123
*Counsel for Plaintiff*

William Grausso
Grausso & Foy, LLP
8 West Main Street
Suite 5
Patchogue, NY 11934
*Counsel for Defendant David Cohen*

Kevin Snover Esq.
*Court Appointed Referee*

**GARY R. BROWN, United States District Judge:**

      After several years of litigation in this mortgage foreclosure action, plaintiff prevailed on summary judgment against one defendant and obtained default judgment against another. *See* DE 52, 58. In August 2021, this Court entered an Amended Judgment of Foreclosure and Sale, appointing a referee to handle disposition of the property, which was scheduled for September 21, 2021. *Id.* On September 20, 2021, defendant David Cohen filed a hardship declaration pursuant

1

to the amendment and extension of New York State's COVID-19 Emergency Eviction and Foreclosure Prevention Act of 2020 ("CEEFPA"). DE 60.

That same day, plaintiff moved by Order to Show Cause to challenge the hardship declaration and seeking a preliminary injunction directing that the sale proceed as originally ordered. DE 61. That defendant had defaulted on the mortgage in 2012 – nearly eight years before the advent of the pandemic – represented plaintiff's principal basis for challenging the hardship declaration. DE 61-9 at 9. Based on this showing, the Court temporarily stayed the foreclosure sale and directed that a hardship hearing be held on October 18, 2021. This opinion follows.

*Facts*

At the hearing, defendant testified and several exhibits were received into evidence. Defendant testified that in 2019, he was working in a senior management role at a company called Tensator, a position he had held for eight years. Tr. 8-9. In 2019, he left Tensator, which manufactured "crowd management products," in favor of a more senior position at a firm called Fleetwood. Tr. 8-10. In July 2019, due to a reduction in workforce, defendant was laid off and began collecting unemployment. *Id.* Later that year, he formed a new business called Barrier Direct, working with products similar to those produced by Tensator. *Id.* at 11, 17. The advent of COVID had a considerable negative effect on the fledgling business. *Id.* Though the business has offered some promise, defendant has not yet been able to draw a salary or share in the revenue. *Id.* at 11, 14-15.

The net financial effect upon defendant was significant. On his 2019 tax return, defendant reported total income of $85,000. *Id*. at 12-13, Ex. 1. The following year's tax return reveals total income of $26,000. *Id.*, Ex. 2. The principal source of the 2020 income was unemployment insurance payments. *Id*. at 14.

Defendant acknowledges that he has not paid his mortgage payments in many years, as he initially defaulted while attempting to qualify for relief under the Home Affordable Modification Program (HAMP). *Id*. at 20. At the same time, his financial situation was such that, in March 2020, immediately prior to the commencement of the pandemic, he was unemployed and financially unable to make mortgage payments. *Id*. at 22.

Though the Hardship Declaration does not specify the specific sections claimed, counsel for defendant identified two specific paragraphs applicable to this defendant: paragraph one, relating to significant loss of income during the pandemic and paragraph 5, relating to circumstances arising from the pandemic having a negative effect on his ability to earn income or obtain employment. *Id*. at 24. Counsel for plaintiff emphasized that the testimony establishes that, assuming defendant did suffer financial setbacks from the pandemic, "it's not a cause and effect." *Id*. at 26. In other words, given that defendant admitted he was unable to pay the mortgage obligations before the pandemic, he should not be entitled to the benefit of the eviction moratorium.

*Discussion*

a. *Effect of the Hardship Declaration and Plaintiff's Entitlement to a Hardship Hearing*

"On September 2, 2021, the New York State legislature extended foreclosure and eviction protections through January 15, 2022, and, in an apparent attempt to address the due process concerns identified in *Chrysafis*, created a mechanism for landlords to contest tenants' declarations of financial hardship." *Melendez v. City of New York*, 2021 WL 4997666, at *5 n.19 (2d Cir. Oct. 28, 2021) (citing 2021 N.Y. Sess. Law Ch. 417 (McKinney), § 2; pt. B, subparts A–C; pt. C, subparts A–C). Under the current framework, a resident can invoke hardship by the filing of a declaration. *Id.* at *39 ("New York's statutory eviction moratoria apply only to those claiming

3

pandemic-related hardship[.]"). While the statements contained therein are not made under oath, the declaration bears the clear, unequivocal warning that:

> You are signing and submitting this form under penalty of law. That means it is against the law to make a statement on this form that you know is false.

*See, e.g.*, DE 60.

Under the amended statute, service of the hardship declaration stays eviction until January 15, 2022, unless challenged in a hearing. *See Wilmington Sav. Fund Soc'y, FSB v. Horn*, 2021 WL 4803709, at *1 (S.D.N.Y. Oct. 14, 2021) ("Pursuant to [CEEPFA], foreclosure cases such as the instant matter have been stayed by operation of law."). To obtain such a hearing, the landlord must seek a declaration hardship hearing by filing a motion "attesting a good faith belief that the respondent has not experienced a hardship." *Chrysafis v. Marks*, 15 F.4th 208, 213 (2d Cir. 2021) (quoting CEEFPA Subpart C(A) 2021, § 10(a)).

State courts have taken varied approaches to the showing required to demonstrate a "good faith belief" in these circumstances.[1] According to one court:

> the Legislature did not require landlords to, for example, show "knowledge" of a tenant's hardship status to obtain a hearing. Rather, landlords only have to show a "belief," albeit one that has a good-faith basis.

*Harbor Tech LLC, v. Correa*, 2021 WL 4945158, at *3 (N.Y. Civ. Ct. Oct. 25, 2021); *see Bitzarkis v. Evans*, 2021 WL 4889193, at *2 (N.Y. Civ. Ct. Oct. 20, 2021) (same). Several decisions have granted hearings that upended hardship declarations under a variety of circumstances. *See, e.g.*, *Harbor Tech*, 2021 WL 4945158 at *3 (holding that social media posts reflecting a tenant's activities "are exactly the kind of discreet [sic], specific, non-conclusory facts — and therefore made in good faith — upon which to form a 'belief' that Respondent Soto has not suffered a

---

[1] Anecdotally, plaintiff's counsel advised that, in his experience, "state court[s] [have] been very hesitant to schedule these hearings." Tr. 29; *cf. Bibow v. Bibow*, 72 Misc. 3d 1212(A), 150 N.Y.S.3d 232 (N.Y. Dist. Ct. 2021) (noting that, regarding aspects of pre-amendment statute, "New York State's Courts are in a somewhat confused state").

4

pandemic-related hardship"); *Bitzarkis*, 2021 WL 4889193, at *2 (fact that rent received from Human Resources Administration and not tenant directly supported good-faith basis to challenge hardship declaration); *Sanchez-Tiben v. Washington*, 2021 WL 4839235, at *2 (N.Y. Civ. Ct. Oct. 18, 2021) (observations of tenant continuing to commute to work without a mask or other signs of financial or medical distress sufficient for hearing); *cf. Omega Melville, LC v. Fusion Mgmt., Inc.*, 72 Misc. 3d 1048, 1051 (N.Y. Dist. Ct. 2021) (dissolution of corporate tenant combined with certification of continued New York residence of same provided basis for "COVID-19 Moratorium 'standing' hearing"). At least one state court has held a hardship declaration invalid under circumstances similar to those presented here. *Diamond Ridge Partners LLC v. Hanspal*, No. LT-6528/17, 2021 WL 4271024, at *4 (N.Y. Dist. Ct. Sept. 14, 2021) ("Respondents' behavior, which reflect no payments of any kind for decades, augurs strongly against any protection under the CEEFPA statute, as this could not be considered a temporary issue warranting interim protection."). Ultimately, the Court determined, and counsel agreed, that the facts set forth in this case, to wit: that defendant's default long preceded the pandemic, constituted sufficient grounds to hold a hearing. Tr. at 6. As to the burden of proof at that hearing, the Court determined, and counsel agreed, that once plaintiff demonstrated its entitlement to a hearing, the burden was upon defendant to produce at least some evidence to support the hardship declaration. Tr. 5-6; *Compare Harbor Tech*, 2021 WL 4945158, at *3 (noting that "[i]ntuitively, it is the movant who bears the burden of proving its case, a proposition only bolstered by the New Statute," but holding that courts maintain discretion and flexibility on this question).

   b. *Analysis of the Evidence and Application of CEEFPA*

The evidence here is easily summarized: defendant defaulted on his mortgage years before the onset of the COVID-19 pandemic, and it cannot be gainsaid that factors other than COVID-19

5

caused his default and inability to pay. The day before the pandemic began, he was unable to make his mortgage payments. At the same time, it is beyond dispute that the defendant suffered significant financial setbacks during and as a result of the pandemic, most specifically, the inability to grow his new business. Those financial setbacks undermined any ability to meet his obligations under the mortgage.

The question, then, is the effect of the statute as applied to these facts. Does CEEFPA apply to a mortgagor who suffers a financial hardship from COVID-19, even if that hardship does not represent the initial cause of the default? One state court interpreting the amended statute noted the following:

> The legislative intent of the act, and all of its precedent legislation, has been to be as expansive as possible — as is explicitly set forth in § 2 of L. 2021 Ch. 417. The Court of Appeals has repeatedly stated that the primary method of statutory interpretation deference courts should be the legislature's intent. *DaimlerChrysler Corp v. Spitzer,* 7 N.Y.3d 653, 827 N.Y.S.2d 88, 860 N.E.2d 705 (2006); *Yatauro v. Mangano,* 17 N.Y.3d 420, 931 N.Y.S.2d 36, 955 N.E.2d 343 (2011); *Nostrom v. A.W. Chesterton Co.,* 15 N.Y.3d 502, 914 N.Y.S.2d 725, 940 N.E.2d 551 (2010). The language of the statute itself is the starting point for discerning such intent. *Roberts v. Tishman Speyer Props., L.P.,* 13 N.Y.3d 270, 890 N.Y.S.2d 388, 918 N.E.2d 900 (2009). In this situation, the legislature itself stated that it was the intent of the legislation to "avoid as many evictions as possible for people experiencing a financial hardship" To such end, the statute must be interpreted by this court to carry out this end. *Tzifil Realty Corp. v. Mazrekaj,* 72 Misc. 3d 748, 150 N.Y.S.3d 865 (Civ. Ct. Kings Co., 2021).

*Ocean Bay Rad LLC v. Tolliver*, 2021 WL 4979375, at *1 (N.Y. Civ. Ct. Oct. 19, 2021) (expanding the applicability of the moratorium based upon the legislature's amendment of hardship declaration to include "respondent" rather than "tenant"). While that observation is instructive, the Court need not delve into legislative intent, as the terms in the statute dictate the outcome here. *United States v. Ron Pair Enterprises, Inc.*, 489 U.S. 235, 242, (1989) ("plain meaning of legislation should be conclusive, except in the 'rare cases [in which] the literal application of a

6

statute will produce a result demonstrably at odds with the intentions of its drafters'") (quoting *Griffin v. Oceanic Contractors, Inc.*, 458 U.S. 564, 571 (1982)).

As relevant herein, suffering a pandemic-related financial hardship constitutes the *sine qua non* for obtaining a hearing and, potentially, relief under the statute. A question could arise as to whether the statute is meant to apply only to those whose inability to pay arises *because of* such privation as compared to a pre-existing financial hardship that prevented payment. *Compare Casey v. Whitehouse Ests. Inc.*, 2021 WL 4203312, at *5 (N.Y. Sup. Ct. Sept. 15, 2021) ("If, as defendants contend, [the tenants] have been in default on their rent obligations since 2013, that would establish only that [the tenants] did not pay rent that they owed—not necessarily that they were unable to pay that rent"), *with Diamond Ridge Partners*, 2021 WL 4271024, at *3 ("CEEFPA and related statutes were not promulgated to serve as a mechanism to delay further the administration of justice in cases, such as this, pending for decades.").

The provisions of CEEFPA – subject to the imprecision that could be expected from emergency legislation – provide varying answers. Part C, applicable to the mortgage foreclosure and eviction moratorium, frequently describes the relevant consideration as relating to difficulties experienced "during the COVID-19 pandemic." *See* Part C, Subpart B, § 2 (found in notice to mortgagors and ¶¶ 1-4 of the prescribed declaration). Section 8 of Subpart B of Part C, which defines the rebuttable presumption arising from the filing of the hardship declaration, describes "a mortgagor suffering from a financial hardship *during or due to* the COVID–19 pandemic." (emphasis added). Thus, these provisions of the statute appear to benefit those experiencing COVID-19 induced hardship without regard to whether other factors caused or contributed to those individuals' inability to pay. *See Casey v. Whitehouse Ests. Inc.*, 2021 WL 4203312, at *5 (rejecting the argument that "[s]ince the tenants were in default for many years before the

7

pandemic ... their inability to pay this substantial amount is not as a result of the pandemic," and, "[a]s such, the new statute does not apply").

At the same time, the prescribed language of the declaration explicitly turns on the mortgagor making the representation that:

> "I am experiencing financial hardship, and I am unable to pay my mortgage in full *because of* …
>
> 1. Significant loss of household income during the COVID–19 pandemic [or] …
>
> 5. Other circumstances related to the COVID–19 pandemic have negatively affected my ability to obtain meaningful employment or earn income or have significantly reduced my household income or significantly increased my expenses.

*See* Part C, Subpart B, § 2 (emphasis added). Thus, a court might invalidate such a declaration by a mortgagor who lacked the ability to pay prior to the onset of COVID-19, and whose fortunes remained unaffected by the pandemic, as such an individual could not truthfully represent that the failure to pay was "because of" pandemic-related misfortune. If the mortgagor never had any hope of making the payment, the statute might be inapplicable.

Here, the facts are different. As he testified, the defendant indisputably lacked the ability to pay the mortgage in March 2020 before the pandemic began. Yet, the hardship declaration filed herein was executed eighteen months later in September 2020. Plaintiff credibly testified that the business he founded in 2019 unexpectedly failed to grow as a result of COVID-19, and this testimony remains unrebutted. At the same time, that business offered promise that payment could have been made but for the intervention of the pandemic. *See Casey* 2021 WL 4203312, at *5 ("It is thus possible that [the tenants] *now* suffer from a financial hardship consisting of an inability to cover their rental obligations due to COVID-19-related causes, even if they were able to cover those obligations before."). Therefore, the Court cannot find the hardship declaration invalid.

*Conclusion*

Based on the foregoing, the provisions of CEEFPA require that the sale of the subject property be stayed until January 15, 2022.

**SO ORDERED.**

Dated: November 4, 2021
Central Islip, New York

                                           /s/ Gary R. Brown
                                           HON. GARY R. BROWN
                                           UNITED STATES DISTRICT JUDGE